# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 11, 2022

Lyle W. Cayce
Clerk

No. 20-11076

_____

Siplast, Incorporated,

*Plaintiff—Appellant*,

*versus*

Employers Mutual Casualty Company,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-1320

_____

Before King, Higginson, and Wilson, *Circuit Judges*.

Per Curiam:

This case concerns a dispute over whether insurer Employers Mutual Casualty Company has a duty to defend in a lawsuit filed against its insured, Siplast, Inc. Because we find that there is a duty to defend, we reverse the judgment of the district court and remand for further proceedings.

## I.   Facts and Procedural History
### A.  The Underlying Lawsuit

This duty-to-defend case arises from an underlying lawsuit (the "Underlying Lawsuit") filed in New York state court by the Archdiocese of

No. 20-11076

New York (the "Archdiocese") and other plaintiffs (together, the "Underlying Plaintiffs") against various parties including roofing manufacturer Siplast, Inc. ("Siplast").[1] The Underlying Lawsuit stemmed from the Archdiocese's 2012 purchase of a roof membrane system from Siplast, to be installed at a high school in the Bronx, New York. In conjunction with that sale, Siplast guaranteed that the roof membrane system would "remain in a watertight condition for a period of 20 years, commencing with the date hereof; or SIPLAST will repair the Roof Membrane/System at its own expense" (the "Siplast Guarantee").

The following facts that occurred after installation of the roof are drawn from the Archdiocese's complaint in the aforementioned New York state lawsuit (the "Underlying Complaint"). In November 2016, school officials allegedly observed "water damage in the ceiling tiles throughout the Premises after a rain storm" and "notified both [the installing contractor] and Siplast of the water damage and potential leaks." A designated Siplast contractor attempted to repair any damage and prevent leaks, but to no avail; "the School continued to suffer from additional leaks and water damage." After continued communication, during which "Siplast admitted that there were problems with the roof that needed to be addressed," Siplast eventually informed the Archdiocese that "its earlier repair attempts [had been] temporary" and that Siplast "would not honor the Siplast Guarantee with respect to any permanent improvements of the roof."

The Archdiocese then retained a consultant who "performed an exhaustive inspection and survey of the water penetration issues involving the roofing system" and "noted significant issues with both the

---

[1] *Archdiocese of New York, et al. v. Vema Enters. and Siplast, Inc.*, No. 32077/2018E (N.Y. Sup. Ct.).

workmanship and the materials that were compromising the entire roof membrane and system." "Accordingly, the roofing membrane and system has failed of its essential purpose and the only way to remediate the issues caused thereby is to replace *in toto* the existing, failed membrane and system with a new one." "The estimate provided by the consultant fixed the total cost of the remediation and replacement efforts at approximately $5,000,000."

Based on these alleged facts, the Underlying Plaintiffs filed suit against Siplast and the installing contractor. In their causes of action, the Underlying Plaintiffs stated that they "repeat[,] reaffirm[,] and reallege each of the previous allegations as if fully set forth herein." Specifically as to Siplast, the Underlying Plaintiffs asserted a cause of action for "Breach of the Guarantee," alleging that:

> Siplast materially breached its obligations under the Siplast Guarantee by, among other things, (i) failing to correct defects in the roof membrane, system and flashing when called upon by the [Underlying] Plaintiffs to do so, and (ii) failing to abide by the terms of the Siplast Guarantee. . . . As a result of Siplast's material breaches of the Siplast Guarantee, the [Underlying] Plaintiffs will be forced to replace the roof well in advance of the 20-year-plus expected useful term at a cost of approximately $5,000,000. By reason of such material breaches of the Siplast Guarantee, the Plaintiffs are entitled to judgment against Siplast in an amount to be determined at trial, but in excess of $5,000,000, together with appropriate interest thereon.

## B. The Insurance Policy

After receiving the Underlying Plaintiffs' formal notice of their intent to hold Siplast liable, Siplast submitted a claim to Employers Mutual Casualty Company ("EMCC") asserting coverage under commercial general liability policies Siplast had purchased. Those policies required that

No. 20-11076

EMCC "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies" and that EMCC "will have the right and duty to defend the insured against any 'suit' seeking those damages." For the insurance to apply, the property damage must have been caused by an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The policies were also subject to several exclusions. The two exclusions relevant to the instant dispute are the "Your Product/Your Work Exclusion" and the "Contractual Liability Exclusion."

The "Your Product/Your Work Exclusion" excluded coverage of "'[p]roperty damage' to 'your product' arising out of it or any part of it" or "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" It defined "Your [P]roduct" as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by [you]" and "materials, parts or equipment furnished in connection with such goods and products." "Your [W]ork" was defined as "[w]ork or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations."

The "Contractual Liability Exclusion" excluded coverage for "property damage" for which Siplast "is obligated to pay damages by reason of the assumption of liability in a contract or agreement." However, the exclusion does not apply to liability for damages "[t]hat the insured would have in the absence of the contract or agreement."

## C. Procedural History

After EMCC denied coverage, including its duty to defend Siplast in the Underlying Lawsuit, Siplast filed suit against EMCC in May 2019. It

4

asserted claims for: (1) declaratory relief, "seek[ing] a judicial declaration that EMCC is obligated to provide a defense to Siplast in the Underlying Action," (2) breach of contract, (3) violations of Texas Insurance Code § 542.051 *et seq.* (prompt payment of claims) and § 541.061 (misrepresentation of insurance policy), and (4) attorneys' fees. EMCC brought a counterclaim for declaratory relief, seeking a judicial declaration that it had no duty to defend Siplast in the Underlying Lawsuit and that it had "no duty to indemnify Siplast for any non-covered damages, including the $5,000,000 cost of replacing Siplast's work and/or product."

Both Siplast and EMCC moved for summary judgment—Siplast on its declaratory relief and breach-of-contract claims, and EMCC on its counterclaim for declaratory judgment as well as on all of Siplast's asserted claims. The district court granted EMCC's motion for summary judgment and denied Siplast's motion for partial summary judgment, finding that while the complaint in the Underlying Lawsuit did allege property damage that was caused by an "occurrence," the alleged damage fit within the Your Product/Your Work Exclusion. The district court did not consider the applicability of the Contractual Liability Exclusion. Siplast timely appeals.

## II.    STANDARD OF REVIEW

"We review a district court's judgment on cross motions for summary judgment de novo, addressing each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 745 (5th Cir. 2009). A grant of summary judgment can stand "only if there is no genuine issue of material fact and the party is entitled to prevail as a matter of law." *Id.* Whether an insurer has a duty to defend the insured is a question of law which this court reviews de novo as well. *Ooida Risk Retention Grp. v. Williams*, 579 F.3d 469, 471-72 (5th Cir. 2009).

No. 20-11076

## III.   DISCUSSION
### A.  Governing Law

The law of the forum state, Texas, applies in this diversity case. *See Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 363 (5th Cir. 2008). "Under Texas law, an insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012) (quoting *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011)). These duties are separate, with the duty to defend the broader of the two; "[t]hus, an insurer may have a duty to defend but, eventually, no obligation to indemnify." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490-91 (Tex. 2008).  Therefore, even though an insurer may not ultimately indemnify its insured, it "must defend its insured if a plaintiff's factual allegations potentially support a covered claim." *Id.* at 490.

The determination of whether an insurer has a duty to defend is made under the "eight-corners rule." *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 494 (Tex. 2020). "The eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from the terms of the policy and the pleadings of the third-party claimant." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). "The 'four corners' of the petition and the 'four corners' of the policy together comprise the 'eight corners' that give the rule its name." *Richards*, 597 S.W.3d at 494-95. "Resort to evidence outside the four corners of these two documents is generally prohibited." *GuideOne*, 197 S.W.3d at 307.

When considering whether a third-party complaint triggers a duty to defend, the focus is "on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Nat'l Union Fire Ins. Co.*

*v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam) (quoting and reversing the lower court). "If the underlying pleadings allege facts that may fall within the scope of coverage, the insurer has a duty to defend; if the pleading only alleges facts excluded by the policy, there is no duty to defend." *Freeport Welding & Fabricating*, 699 F.3d at 840. In addition, a third-party complaint must both "allege[] and seek[] damages for an event potentially covered by the policy." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252-53 (5th Cir. 2011) (quoting *D.R.-Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)).

A comparison between two cases, *Wilshire Insurance Co. v. RJT Construction, LLC*, 581 F.3d 222 (5th Cir. 2009), and *Building Specialties, Inc. v. Liberty Mutual Fire Insurance Co.*, 712 F. Supp. 2d 628 (S.D. Tex. 2010), is instructive when considering the type of factual allegations required to trigger the duty to defend. *Wilshire Insurance* considered whether there was a duty to defend the insured, a construction company that performed work on the foundation of a home, when the homeowner "allege[d] that cracks in the walls and ceilings suddenly appeared in his home, damage which he attribute[d] to the foundation being out of level." 581 F.3d at 224. We held that there was:

> The complaint allege[d] that the faulty foundation caused damage to other parts of the house that [the insured construction company] did not work on including the walls and ceilings. The "your work" exclusion does not preclude coverage for damage to the parts of the house resulting from the allegedly faulty foundation. Because these damages present a covered claim, [the insurer] must defend the entire suit.

*Id.* at 227.

*Building Specialties*, in turn, concerned an insured company hired to "install heating and air conditioning insulation for a residential construction project in Houston, Texas." *Building Specialties*, 712 F. Supp. 2d at 631. The

No. 20-11076

third-party complaint in that case alleged that "shortly after the system began operating, defects in the installation of the duct work were discovered" and that the insured "refused to tender payment" for both completed and future "repairs to fix the defective heating and air conditioning duct work."[2] The district court found that there was no duty to defend. It reasoned that "the underlying petition only alleged defective installation of the duct work" and that "the only damages alleged and sought were 'for payment for the additional work to remedy the problem and fix the damage.' " *Building Specialties*, 712 F. Supp. 2d at 640. In contrast to *Wilshire Insurance*, the "amended petition in the underlying suit did not allege that the allegedly defective heating and air conditioning duct work damaged any other part of the home or resulted in any loss of use." *Id.* Therefore, the district court ruled that "as a matter of law, there [was] no duty to defend because the underlying lawsuit did not claim covered property damage." *Id.* at 645.

The district court in *Building Specialties* specifically compared its case to *Wilshire Insurance* when considering the applicability of a "your work" exclusion. It found that "unlike the allegations in the underlying litigation in *Wilshire Insurance Co.*, [the third-party plaintiff] alleged damages only for repairing and replacing [the insured's] allegedly defective ductwork." *Id.* at 648. Since "there [was] no allegation or competent summary judgment evidence of damage to any other property resulting from the defective duct work," the "your work exclusion" negated any duty to defend the insurer might have had. *Id.*

---

[2] These factual allegations are drawn from the third-party complaint in *Building Specialties*, which Siplast attached to its reply brief. The court may take judicial notice of this pleading. *See Lake Eugenie Land & Dev., Inc. v. Halliburton Energy Servs. (In re Deepwater Horizon)*, 934 F.3d 434, 440 (5th Cir. 2019) ("We may take judicial notice of prior court proceedings as matters of public record.").

Reading these two cases together demonstrates the type of factual allegations necessary to trigger a duty to defend. If the complaint alleges damage to and seeks damages for any property that is not the insured's product or directly subject to the insured's work, as occurred in *Wilshire Insurance*, then the claim falls outside of a "your product/your work" exclusion and the insurer has a duty to defend. However, as in *Building Specialties*, if the complaint solely alleges facts and damage to the insured's own products, or solely seeks to recover the costs to repair the insured's work, then it is covered by a "your product/your work" exclusion and the duty to defend remains dormant.

The initial burden of proof is on the insured to show that a given claim is covered by the insurance policy; however, "when 'the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply.' " *Trinity Universal Ins. Co. v. Emps. Mut. Cas. Co.*, 592 F.3d 687, 692 (5th Cir. 2010) (quoting *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999)). For both the third-party complaint and the insurance policy, if there are any ambiguities, the tie goes to the insured. "When the language of an insurance policy 'is susceptible to more than one construction, it should be construed strictly against the insurer and liberally in favor of the insured.' " *Gonzalez v. Mid-Continent Cas. Co.*, 969 F.3d 554, 557 (5th Cir. 2020) (quoting *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009)). Moreover, when judging whether a third-party complaint alleges a claim covered by the duty to defend, "we construe the pleadings liberally." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (citations omitted). Ultimately, "[w]e resolve all doubts regarding the duty to defend in favor of the duty." *Id.* (citations omitted).

No. 20-11076

## B. Your Product/Your Work Exclusion

Each of Siplast's and EMCC's claims that are at issue in this case can largely be reduced to a single question: does the Underlying Complaint contain allegations of damage to property other than Siplast's roof membrane as part of the cause of action against Siplast? Liberally construed, it does.

As the district court noted, "the [U]nderlying [C]omplaint mentions damage to school property other than the Siplast roofing products." The district court, however, found that while the complaint *mentioned* said damage, the Archdiocese did not actually make "a claim to recover from Siplast for any damage to the building caused by the leaky roof that is separate from the damage to Siplast's product." That reading of the Underlying Plaintiffs' complaint is overly narrow. The factual allegations raised by the complaint repeatedly point to damage to property other than Siplast's roof membrane system. The Underlying Complaint alleges that there was "water damage in the ceiling tiles throughout the [school] after a rain storm" and that Siplast recommended the Archdiocese "contact a designated Siplast roofing contractor to address the *damage* and leak." The complaint further alleges that "[d]espite the work performed by Siplast's designated contractor, the School continued to suffer from additional leaks and *water damage*." It then alleges that the installing contractor told the Archdiocese that "the leaks and *any damage created thereby* were the sole responsibility of Siplast under the Siplast Guarantee."

A court must consider "any reasonable inferences that flow from the facts alleged." *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 601 (5th Cir. 2006). Each of these factual allegations contained within the Underlying Complaint creates an inference that the Underlying Plaintiffs asserted their cause of action based not only on damage to the roof membrane, but also on property damage to other parts of the school. It can also be inferred from the

10

factual allegations that the water damage to non-roof-membrane property was caused by the failure of Siplast's faulty roof membrane system. Further, the allegations that additional water damage occurred even after Siplast's designated contractor attempted repairs suggests that the additional water damage was caused by Siplast's failure to honor the Siplast Guarantee by timely and effectively repairing the roof membrane system—the cause of action the Underlying Plaintiffs asserted. Accordingly, these factual allegations make clear that the Underlying Complaint alleged damage to property other than Siplast's roof membrane as part of the Underlying Plaintiffs' cause of action (i.e., breach of the Siplast Guarantee).

Returning to the comparison between *Wilshire Insurance* and *Building Specialties*, this case is like the former—the  complaint alleges damage to property beyond the product and work of the insured. Therefore, there is a duty to defend based on those allegations. And since the Underlying Complaint includes allegations of damage to both non-covered and covered property, that duty to defend extends to the entire suit. *Zurich Am. Ins.*, 268 S.W.3d at 491 ("If a complaint potentially includes a covered claim, the insurer must defend the entire suit.").

Moreover, the Underlying Complaint goes beyond merely "mentioning" property damage that would be covered by the insurance policies; it additionally links that damage to the cause of action. In their cause of action against Siplast, the Underlying Plaintiffs stated that they "repeat[,] reaffirm[,] and reallege each of the previous allegations as if fully set forth herein." The previous allegations that are incorporated into the cause of action by this language include the allegations of covered property damage to the school, which triggers EMCC's duty to defend. True, this type of reallegation language is common to the point of being boilerplate. However, that fact does not render the language invalid. Instead, this clause does exactly what it says it does—reincorporates all previous factual allegations,

including those related to property damage to the school building that is covered by the policies at issue, into the cause of action.

That fact is what separates this boilerplate language from a "catch-all" provision, or Mother Hubbard Clause, seeking "other and further relief," which courts have found do not trigger a duty to defend. *See Clemons v. State Farm Fire & Cas. Co.*, 879 S.W.2d 385, 393 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Feed Store Inc. v. Reliance Ins. Co.*, 774 S.W.2d 73, 75 (Tex. App.—Houston [14th Dist.] 1989, writ denied). In each of those cases, the insured attempted to use these "catch-all provisions" to *create* facts and allegations which were not present in the complaint. Texas courts have rejected this attempt to use boilerplate language as a way to find "invisible allegations" which were not actually located in the complaint, reasoning that to do so would mean that "[a]ll lawsuits seeking 'other and further relief' would precipitate a duty to defend." *Id.*

The instant case is materially different. Unlike the Mother Hubbard examples, there is no attempt here to use boilerplate language to locate invisible allegations lurking in the complaint's penumbras, or to create those allegations from whole cloth. Instead, the factual allegations of covered damage are explicitly included in the complaint. The boilerplate language used by the Underlying Plaintiffs simply ties those factual allegations to the cause of action. That is a sufficient method for a complaint to include allegations that can trigger a duty to defend.

Read liberally, the Underlying Complaint also satisfies the requirement that the Underlying Plaintiffs seek damages that could be covered by the insurance policies. The section of the Underlying Complaint asserting the cause of action against Siplast does not specifically mention damage to non-roof property. However, the consultant hired by the Archdiocese estimated that replacing the roof membrane would cost

approximately $5,000,000. Yet in their cause of action against Siplast, the Underlying Plaintiffs allege damages against Siplast "*in excess* of $5,000,000," rather than limiting the alleged damages to the estimated cost of replacing the roof. This damage request can therefore be read to include compensation for the water damage to the school proper.

EMCC presents several theories explaining how the "in excess" language could relate solely to the replacement of the roof—that it could include interest on the replacement costs due to Siplast's failure to perform, that it includes attorneys' fees, or that it reflects the fact that the $5,000,000 figure was an estimate. But it is equally plausible that the damage figure includes both the known (or estimated) cost to repair the roof membrane *and* the unknown additional cost to repair any water damage done to the school itself, which is covered by the policies. Especially when "resolv[ing] all doubts regarding the duty to defend in favor of the duty," *Zurich Am. Ins.*, 268 S.W.3d at 491, as we must, the Underlying Complaint's request for damages in excess of $5,000,000 should be read to go beyond the repair costs for the roof membrane and to include a prayer for damages covered by the insurance policies. That cause of action triggers EMCC's duty to defend.

### C. Occurrence

For largely the same reasons discussed above, the district court did not err in determining that the Underlying Complaint presented an "occurrence." The policies state that an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Texas Supreme Court has stated that "[a]n accident is generally understood to be a fortuitous, unexpected, and unintended event." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8-9 (Tex. 2007). An event is not accidental if "the resulting damage was the natural and expected result of the insured's actions" and

"was highly probable whether the insured was negligent or not." *Id.* at 9. Therefore, " 'claims for damage caused by an insured's defective performance or faulty workmanship' may constitute an 'occurrence' when 'property damage' results from the 'unexpected, unforeseen or undesigned happening or consequence' of the insured's negligent behavior." *Id.* at 16 (quoting *Federated Mut. Ins. Co.*, 197 F.3d at 725).

The district court determined that there was an "occurrence" as defined by the insurance policies:

> The origin of the property damage the underlying plaintiffs allege is defects with the workmanship and materials that comprised the roof membrane and system. As in *Lamar Homes*, there is nothing in the underlying pleading that alleges Siplast intended or expected its roofing system to fail. . . . The [U]nderlying [C]omplaint alleges property damage caused by an accident or occurrence.

This determination was correct. As stated above in the discussion on the applicability of the Your Product/Your Work Exclusion, the complaint contains factual allegations that Siplast's negligence led to the failure of the roof membrane, which caused damage to both the roof itself and to the school as a whole. There are no allegations that the failure of the roof and the attendant damage were intended by Siplast or the "natural and expected result of the insured's actions" (namely, the installation of the roof); it is not "highly probable" that the roof would leak "whether the insured was negligent or not." *Lamar Homes*, 242 S.W.3d at 8-9. Instead, the allegations that "Siplast admitted that there were problems with the roof," attempted to repair them through its designated contractor, and failed (leading to further leaks and damage) can be inferred to be allegations of negligence. The failure of the roof was an occurrence.

EMCC argues that there was no occurrence because the cause of action in the Underlying Complaint was for Siplast's breach of the Siplast Guarantee—an intentional and deliberate act that does not constitute an accident. However, this argument fails for two reasons. First, the finding of an occurrence necessarily follows from our holding that the Underlying Complaint includes allegations related to the school as a whole, and not just the replacement of the roof. As stated above, the complaint should be liberally read to seek damages to compensate for the water damage to the school—damage that was the result of an accidental occurrence covered by the insurance policies.

Second, EMCC's argument is contrary to the holding of *Lamar Homes*. The dissent in *Lamar Homes* made the exact same argument as EMCC—that the defendant "was sued for breaking promises, not for breaking property" and therefore the complained-of damages were not occurrences. *Lamar Homes*, 242 S.W.3d at 24 (Brister, J., dissenting). However, that argument did not prevail in *Lamar Homes*, and so cannot prevail here. Instead, a majority of the Texas Supreme Court reasoned that:

> The duty to defend must be determined under the eight-corners rule rather than by the labels attached to the underlying claims.
>
> The proper inquiry is whether an "occurrence" has caused "property damage," not whether the ultimate remedy for that claim lies in contract or in tort.

*Id.* at 15–16 (internal citations omitted); *see also Landry's, Inc. v. Ins. Co. of Pa.*, 4 F.4th 366, 371 (5th Cir. 2021) (quorum decision) (commenting on the language from *Lamar Homes* and stating "[t]hat's a different way of saying that we must focus on 'the facts alleged' in the complaint, 'not on the actual legal theories' invoked" (quoting *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 392 (5th Cir. 2001))). While the legal theories

underpinning the Underlying Plaintiffs' cause of action might sound in contract (through Siplast's alleged breach of the Siplast Guarantee), the facts alleged concern property damage to the school and the roof due to Siplast's negligence. That constitutes an occurrence under the policies.

### D. Contractual Liability Exclusion

Lastly, we must consider whether the Contractual Liability Exclusion contained within the insurance policies applies to Siplast's claim and negates EMCC's duty to defend. While the district court did not consider the applicability of this exclusion, it could provide an independent ground for affirming the district court's summary judgment in favor of EMCC should this exclusion apply. *See Thibodeaux v. Sanofi U.S. Servs., Inc. (In re Taxotere (Docetaxel) Prods. Liab. Litig.)*, 995 F.3d 384, 388 (5th Cir. 2021) ("Because of *de novo* review, we may affirm summary judgment on any basis supported by the record even if not reached by the district court."). However, the Contractual Liability Exclusion is similarly inapplicable here and does not vitiate EMCC's duty to defend.

The Contractual Liability Exclusion provides that the insurance policies at issue do not apply to "property damage" for which Siplast "is obligated to pay damages by reason of an assumption of liability in a contract or agreement." However, this exclusion does not apply to liability for damages "[t]hat the insured would have in the absence of the contract or agreement." In determining the scope of such a clause, the question "is not whether the relevant duty is contractual; it is whether the contractual duty represents an *expansion* of liability." *Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 208 (5th Cir. 2014). The Texas Supreme Court has made clear that " 'assumption of liability' means that the insured has assumed a liability for damages that exceeds the liability it would have under general law" because "[o]therwise, the words 'assumption of liability' are meaningless and are

surplusage." *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 37 (Tex. 2014).

The operative question, therefore, is whether the Siplast Guarantee opened Siplast up to additional liability beyond that found at law. It did not. We have already determined that the Underlying Plaintiffs alleged that Siplast negligently provided a defective roof membrane, causing damage including water damage to the school. Even absent the Siplast Guarantee, these allegations, if true, would render Siplast liable to repair the roof. *Crownover*, 772 F.3d at 207-08 (holding that an express duty to repair did not expand an insured's obligations beyond those found at general law). There was no expansion of liability relevant to this case.

The only other argument EMCC raises—for the first time on appeal—is that the Siplast Guarantee expanded Siplast's liability by promising that the roof would remain watertight *for 20 years*. As an initial matter, this argument is forfeited as EMCC did not raise it to the court below. *Doe v. MySpace*, 528 F.3d 413, 422 (5th Cir. 2008) ("Because the Does failed to present this argument to the district court, they are barred from making this argument on appeal."). However, even considering this argument, it does not change our analysis. First, EMCC bears the burden of demonstrating that the Contractual Liability Exclusion applies to Siplast's claims, *Trinity Universal Ins. Co. v. Emps. Mut. Cas. Co.*, 592 F.3d 687, 692 (5th Cir. 2010), yet provides no support for its assertion that the provision guaranteeing the roof's watertightness for 20 years expanded Siplast's liability beyond general law. Second, the 20-year guarantee is irrelevant to the claims raised in the Underlying Complaint. None of those claims relate to whether the roof remained watertight for 20 years; nor could they have, as the Underlying Complaint states that the roof was installed in 2012 and allegedly failed four years later in 2016. Instead, the Underlying Complaint raises claims that the roof failed because it was defective, claims that clearly

No. 20-11076

would attach to Siplast under general law absent the Siplast Guarantee. The Contractual Liability Exclusion does not eliminate EMCC's duty to defend.

### E.  Summary of Holdings

Siplast brought several causes of action against EMCC based on its assertion that EMCC breached its duty to defend. We take each in turn.

Siplast first sought "a judicial declaration that EMCC is obligated to provide a defense to Siplast in the Underlying Action." EMCC, in turn, sought "a judgment declaring that plaintiff's claims against Siplast in the Underlying Lawsuit are not covered under the Policies, and that as a result, no defense owed for same thereunder."[3] This declaratory-judgment question is a legal one, *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 471-72 (5th Cir. 2009), determined solely based on facts before us—the allegations of the Underlying Complaint and the text of the insurance policies. *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 494 (Tex. 2020). This question is therefore of the type where "the record permits only one resolution of the factual issue" and thus "reversing and rendering is the proper course." *Veasey v. Abbott*, 830 F.3d 216, 229-30 (5th Cir. 2016) (en banc) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982)). Because we hold that EMCC does have a duty to defend, we reverse the district court's contrary ruling and render declaratory judgment in favor of Siplast; EMCC has a duty to defend in the Underlying Lawsuit.

---

[3] EMCC also sought judicial declarations related to its duty to indemnify. These were considered by the district court only in the context of its finding that there was no duty to defend, which we reverse. Because the duty to indemnify is separate from the duty to defend, *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008), and the duty to indemnify was not considered independently, we decline to consider it here or issue any declarations related to EMCC's ultimate duty to indemnify. *Montano v. Texas*, 867 F.3d 540, 546 ("[A] court of appeals sits as a court of review, not of first view." (quoting *United States v. Vicencio*, 647 F. App'x 170, 177 (4th Cir. 2016))).

Siplast next raised a claim for breach of contract, alleging that EMCC breached its contracts with Siplast (the insurance policies) by failing to render a defense in the Underlying Lawsuit. This claim could implicate unresolved factual issues not considered by the district court due to its ruling that there was no duty to defend. We therefore reverse the district court's judgment in favor of EMCC on this claim and remand for further proceedings.

Siplast additionally raised claims for various violations of the Texas Insurance Code. However, it did not seek summary judgment on those claims. EMCC did, and the district court granted summary judgment in its favor based solely on its determination that EMCC did not have a duty to defend. Because we reverse that judgment, we further reverse the district court's summary judgment in favor of EMCC on Siplast's Texas Insurance Code claims and remand for further proceedings.

Lastly, the district court ruled that Siplast was not entitled to attorneys' fees because it was not a prevailing party. That finding was also based on the district court's ruling that there was no duty to defend, which we reverse. We therefore additionally reverse this ruling and remand for further proceedings.

## IV.    CONCLUSION

For the foregoing reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.