# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 4, 2020

Lyle W. Cayce
Clerk

No. 19-20674

Waste Management, Incorporated; Waste Management
Hawaii, Incorporated,

*Plaintiffs—Appellants*,

*versus*

AIG Specialty Insurance Company, *formerly known as* Chartis
Specialty Insurance Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-3676

Before Jones, Elrod, and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Plaintiff-Appellants Waste Management, Incorporated ("WMI") and Waste Management Hawaii, Incorporated ("WMHI") (collectively "Waste") entered into an insurance contract with Defendant-Appellee AIG Specialty Insurance Company ("ASIC"). Following two environmental contamination events, the DOJ commenced a grand jury investigation into Waste's actions. The investigation led to an indictment that was resolved through a plea agreement in 2015. ASIC denied Waste coverage for all costs

associated with the criminal proceedings, and Waste filed suit in Texas state court against ASIC and AIG Claims, Incorporated ("AIG Claims"), which served as the insurance adjuster for ASIC. ASIC removed on the basis of diversity jurisdiction, arguing that AIG Claims, a non-diverse party, had been improperly joined. The district court agreed and denied Waste's motion to remand. The district court then determined, after a hearing, that ASIC had no duty to defend Waste against the criminal allegations and granted summary judgment in favor of ASIC. Waste appeals, arguing that the district court erred in denying its motion to remand and in granting summary judgment for ASIC. We AFFIRM.

I

Waste operated the Waimanalo Gulch Sanitary Landfill ("WGSL") under a contract with the city of Honolulu, Hawaii. In late 2010 and early 2011, heavy storms flooded a section of the WGSL. On both occasions, contaminated water was discharged into the Pacific Ocean through an open manhole. The contamination included medical waste such as syringes, blood vials, and catheters, which washed up on nearby beaches.

The Environmental Protection Agency ("EPA") investigated, and on January 25, 2011, it issued an Administrative Order on Consent ("AOC"). Among other things, the AOC required Waste to engage in response work to clean up the discharge. The AOC also explicitly reserved the federal government's right to pursue Waste for other criminal and civil penalties. Waste complied with the AOC, and on August 24, 2011, the EPA informed Waste that the response work had been completed to its satisfaction.

Meanwhile, in April 2011, the Department of Justice ("DOJ") commenced a grand jury investigation into Waste's actions. On April 30, 2014, WMHI and two of its employees were indicted for, inter alia, knowing discharge of pollutants into a water of the United States, in violation of the

No. 19-20674

"Criminal Penalties" provision of the Clean Water Act. 33 U.S.C. §§ 1311(a), 1319(c)(2)(A). Pursuant to a plea agreement, which explicitly provided that it was separate from any potential civil claims against Waste, the defendants ultimately pleaded guilty to negligent discharge of pollutants, also in violation of the "Criminal Penalties" provision of the Clean Water Act. 33 U.S.C. §§ 1311(a), 1319(c)(1)(A). On October 26, 2015, the federal district court in Hawaii imposed a sentence of a $400,000 fine, $200,000 in restitution to neighboring businesses, and a $250 assessment against WMHI.

Civil claims against Waste under the Clean Water Act were tolled during the pendency of the criminal proceedings. Thereafter, in April 2019, Waste entered into a consent decree to resolve the civil proceedings arising out of these pollution incidents.

Waste sought coverage from ASIC for, inter alia, costs associated with defending the criminal proceedings detailed above. According to Waste, these costs were covered by its "Pollution Legal Liability" insurance policy, effective January 2011 through January 2014. That insurance policy, which provided Waste with $50 million dollars of coverage per incident with a $5 million deductible, contained the following relevant provisions.

In "COVERAGE D," ASIC agreed "[t]o pay on behalf of the Insured, Loss that the Insured becomes legally obligated to pay as a result of a Claim for Clean-Up Costs resulting from a Pollution Condition, beyond the boundaries of the Insured Property . . . ." ASIC also agreed that "[w]hen a Claim is made against the Insured to which [Coverage D] applies, . . . [ASIC] has . . . the duty to defend such Claim, even if groundless, false, or fraudulent." However, "[t]his policy [did] not apply to Claims or Loss . . . [d]ue to any criminal fines, criminal penalties or criminal assessments."

The policy defined "Claim" as "a written demand received by the Insured alleging liability or responsibility and seeking a remedy on the part of

3

the Insured for Loss under [Coverage D]." It defined "Clean-Up Costs" as "reasonable and necessary expenses, including legal expenses incurred with [ASIC's] written consent . . ., for the investigation, removal, treatment . . . , remediation . . . , or disposal of soil, surfacewater, groundwater, . . . or other contamination [t]o the extent required by Environmental Laws . . . ." In turn, it defined "Environmental Laws" as "any federal, state, provincial or local laws (including but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to the Pollution Condition."

AIG Claims handled Waste's claim on behalf of ASIC, and ASIC denied coverage for all costs associated with the criminal proceedings.

Waste brought suit against ASIC and AIG Claims in Texas state court. Waste alleged that ASIC violated its duty to defend and its duty to indemnify under the insurance contract, that ASIC breached its duty of good faith and fair dealing with Waste, and that both defendants had violated provisions of the Texas Insurance Code.

ASIC timely removed to federal court, arguing that AIG Claims was improperly joined solely to defeat federal diversity jurisdiction.[1] Waste moved to remand. The district court determined that there was no reasonable probability that Waste would recover against AIG Claims. It therefore denied Waste's motion to remand and denied Waste's subsequent motion for reconsideration.

Waste then filed an amended complaint, which dropped AIG Claims as a defendant. Waste and ASIC filed cross-motions for summary judgment on whether ASIC had a duty to defend Waste against the criminal allegations.

---

[1] Waste and ASIC are diverse, but Waste and AIG Claims are not diverse because both are incorporated in Delaware.

The district court granted summary judgment in favor of ASIC, finding no duty to defend against the criminal allegations. Thereafter, the district court granted ASIC's motion for summary judgment on all remaining claims. Waste appeals.

## II

We review the district court's denial of Waste's motion to remand de novo. *See Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014). We also review the district court's grant of summary judgment de novo, applying the same standard as the district court. *See Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 397 (5th Cir. 2010) (en banc); *McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 456 (5th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, we view all evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III

Waste first challenges the district court's denial of its motion to remand. The district court determined that AIG Claims was improperly joined in order to defeat federal jurisdiction.

The fraudulent joinder doctrine provides that a district court must disregard, for diversity jurisdiction purposes, the citizenship of an improperly joined defendant. *See Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc). A non-diverse defendant is improperly joined if there was actual fraud in the pleading of jurisdictional facts or the plaintiff cannot establish a cause of action against the non-diverse defendant. *See Mumfrey v. CVS Pharmacy,*

*Inc.*, 719 F.3d 392, 401 (5th Cir. 2013). Only the second possibility is raised in this appeal.

To determine whether the plaintiff can establish a cause of action against the non-diverse defendant, the district court conducts a Federal Rule of Civil Procedure 12(b)(6) analysis. *See Smallwood*, 385 F.3d at 573; *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016) (holding that the federal pleading standard applies when determining whether a plaintiff has stated a claim against a non-diverse defendant). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "[T]he existence of even a single valid cause of action against [non-diverse] defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

Waste argues that it sufficiently alleged that AIG Claims violated Texas Insurance Code sections 541.060(a)(2), (a)(4), and (a)(7) by failing to attempt to effectuate a prompt, fair, and equitable settlement; failing to affirm or deny coverage within a reasonable time; and failing to conduct a reasonable investigation.[2]

This court and the Texas Supreme Court have both recognized that "Texas law clearly authorizes [Chapter 541] actions against insurance

---

[2] Waste also raised a claim under section 541.060(a)(1) in its complaint, but Waste failed to argue about or even cite to section 541.060(a)(1) in its opening brief, thereby waiving the issue. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995) ("[W]e do not consider issues raised for the first time in a reply brief."); *Brinkmann v. Dallas Cty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) ("We will not raise and discuss legal issues [the parties have] failed to assert.").

adjusters in their individual capacities."[3] *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 282 (5th Cir. 2007); *see also Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 486 (Tex. 1998). Nevertheless, there is disagreement about which provisions of Chapter 541 apply to adjusters. *Compare, e.g.*, *Lopez v. United Prop. & Cas. Ins. Co.*, 197 F. Supp. 3d 944, 950–51 (S.D. Tex. 2016) (finding that an adjuster could not be held liable under sections 541.060(a)(2), (a)(3), and (a)(4)), *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724–25 (N.D. Tex. 2014) (finding that an adjuster could not be held liable under sections 541.060(a)(2) and (a)(7)), *Montoya v. State Farm Mut. Auto. Ins. Co.*, No. 16-00005, 2016 WL 5942327, at *4 (W.D. Tex. Oct. 12, 2016) (finding that an adjuster could not be held liable under section 541.060(a)(2)), *Meritt Buffalo Events Ctr., LLC v. Cent. Mut. Ins. Co.*, No. 3:15-CV-3741-D, 2016 WL 931217, at *4 (N.D. Tex. March 11, 2016) (finding that an adjuster could not be held liable under sections 541.060(a)(2) and (a)(7)), *Mainali Corp. v. Covington Specialty Ins. Co.*, No. 3:15-CV-1087-D, 2015 WL 5098047, at *4 (N.D. Tex. Aug. 31, 2015) (finding that an adjuster could not be held liable under sections 541.060(a)(2), (a)(3), and (a)(7)), *and One Way Invs., Inc. v. Century Sur. Co.*, No. 3:15-CV-1087-D, 2015 WL 5098047, at *4–5 (N.D. Tex. Aug. 31, 2015) (finding that an adjuster could not be held liable under sections 541.060(a)(2), (a)(4), and (a)(7)), *with Marminco III Family, L.P. v. Arch Specialty Ins. Co.*, No. EP-17-CV-311-KC, 2017 WL 7797711, at *3–5 (W.D. Tex. Dec. 19, 2017) (finding that an adjuster could be held liable under section 541.060(a)(2)), *Roach v. Allstate Vehicle & Prop. Ins. Co.*, No. 3:15-CV-3228-G, 2016 WL 795967, at *5–6 (N.D. Tex. Feb. 29, 2016) (same), *Exch. Servs., Inc. v. Seneca Ins. Co.*, No. 3:15-CV-01873-M, 2015 WL 6163383, at *4–5 (N.D. Tex., October 16, 2015) (finding that an adjuster could be held liable under sections

---

[3] Chapter 541.151 was formerly codified as Tex. Ins. Code, art. 21.21.

541.060(a)(2), (a)(3), (a)(4), and (a)(7)), *Denley Grp., LLC v. Safeco Ins. Co. of Ind.*, No. 3:15-CV-1183-B, 2015 WL 586226, at \*4 (N.D. Tex. Sept. 30, 2015) (finding that an adjuster could be held liable under section 541.060(a)(2)), *Linron Props., Ltd. v. Wausau Underwriters Ins. Co.*, No. 3:15-CV-00293-B, 2015 WL 3755071, at \*4–5 (N.D. Tex. June 16, 2015) (same), *and Arana v. Allstate Tex. Lloyds*, No. 3:13-CV-0750-D, 2013 WL 2149589, at \*5 (N.D. Tex. May 17, 2013) (same).

We need not resolve this dispute because, even assuming that an adjuster can be held liable under Texas Insurance Code sections 541.060(a)(2), (a)(4), and (a)(7), Waste did not allege facts that, taken as true, demonstrate a violation of these provisions. *See Univ. Baptist Church of Fort Worth v. York Risk Servs. Grp., Inc.*, 776 F. App'x 863, 865 (5th Cir. 2019). The only relevant, AIG Claims-specific facts that Waste alleged in its complaint are that (1) AIG Claims served as the adjuster for ASIC and (2) "On July 9, 2013, AIG Claims sent Waste Management a letter denying [certain] coverage . . . ." These threadbare factual allegations, along with Waste's conclusory recitation of the elements of a claim under the Texas Insurance Code, are insufficient to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Roundtree v. Dyson*, 892 F.3d 681, 685 & n.12 (5th Cir. 2018) (same); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ("[T]he court will not accept conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do not reasonably follow from the pleader's description of what happened.").

Notably, Waste did not allege that AIG Claims failed to investigate, delayed any investigation, misevaluated, misprocessed, made any misrepresentation of the policy, or otherwise failed to "effectuate" a fair settlement. *Cf. Marminco III Family*, 2017 WL 7797711, at \*4 (involving

allegations that the adjuster failed to conduct a reasonable inspection and investigation, stated that the damages were less severe than they were, and misrepresented the actual cost to repair or replace the damage); *Roach*, 2016 WL 795967, at \*6 (involving allegations that the adjuster conducted a substandard inspection, failed to include many of the plaintiff's damages in his report, misrepresented the cause of, scope of, and cost to repair the damage, and made these and other misrepresentations to both the plaintiff and the insurer); *Exch. Servs.*, 2015 WL 6163383, at \*5 (involving allegations that the adjuster made numerous intentional errors in estimating the value of the plaintiff's claim, estimated payment of the plaintiff's claim far below the actual cost of repair, conducted an incomplete investigation, failed to consider plaintiff's public adjuster's estimates, and failed to provide a reasonable explanation as to why the defendant was not compensating the plaintiff); *Denley Grp.*, 2015 WL 586226, at \*4 (involving allegations that the adjuster failed to perform a proper and complete investigation, failed to obtain a legal opinion on the obligation owed to the plaintiff, ignored the true facts of the claim, and unreasonably delayed the investigation, adjustment, and resolution of the plaintiff's claim); *Linron Props.*, 2015 WL 3755071, at \*5 (involving allegations that the adjuster retained an engineer and contractor who were known for arriving at findings that favored insurance companies, refused to identify damage to the structure, and failed to respond to the plaintiff's inquiries regarding the status of the claim and payment); *Arana*, 2013 WL 2149589, at \*5 (involving allegations that the adjuster conducted a substandard investigation that failed to include many of the plaintiff's damages); *see also Centaurus Unity v. Lexington Ins. Co.*, 766 F. Supp. 2d 780, 788–89 (S.D. Tex. 2011) (relying on specific allegations directed at the

adjuster defendants to find that the plaintiff had stated a claim under Chapter 541).[4]

The district court did not err in finding that there was no reasonable probability that Waste would recover against AIG Claims. Therefore, the district court did not err in disregarding AIG Claims' citizenship and determining that there was complete diversity. For these reasons, we AFFIRM the district court's denial of Waste's motion to remand.

IV

Next, Waste challenges the district court's summary judgment determination that ASIC had no duty to defend Waste against the criminal allegations.

"When determining whether an insurer has a duty to defend" under Texas law, courts "follow the eight corners rule by looking at the four corners of the complaint for alleged facts that could possibly come within the scope of coverage in the four corners of the insurance policy." *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012). "[I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam) (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). But courts

---

[4] Because we agree that AIG Claims was improperly joined, we need not address ASIC's alternative argument that any error was not fatal to the judgment because, as in *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996), the federal jurisdictional requirements were met at the time final judgment was entered.

should not "look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Id.* at 142.

The insurance policy states that "[w]hen a Claim is made against the Insured to which [Coverage D] applies," ASIC has a duty to defend against "such claim." A "Claim" is defined as "a written demand received by the Insured alleging liability or responsibility and seeking a remedy on the part of the Insured for Loss under [Coverage D]." Coverage D provides coverage when there is a "Claim" for "Clean-Up Costs." Therefore, we examine the four corners of the complaint for facts that could possibly constitute a written demand seeking clean-up costs in connection with the criminal proceedings.

First, Waste argues that the AOC constitutes a claim for clean-up costs that triggered ASIC's duty to defend against the criminal allegations. On its face, however, the AOC appears independent from the criminal proceedings. The AOC issued months before the DOJ began its grand jury investigation and explicitly reserved the federal government's right to pursue Waste for criminal penalties. Moreover, the EPA informed Waste that the response work required by the AOC was complete almost three years before the grand jury indicted WMHI and two of its employees.

Despite this independence, Waste argues that federal enforcement guidance documents establish that all of the proceedings arising out of these pollution incidents are part of a single, coordinated enforcement process. Therefore, according to Waste, the existence of a demand for clean-up costs in the AOC triggered ASIC's duty to defend, which continued through the conclusion of all proceedings based on the same factual allegations.

Waste argues that it is appropriate for us to consider the federal guidance documents even though they fall outside the eight corners of the complaint and insurance policy because the definition of "Clean-Up Costs" refers to "Environmental Laws," which are defined to include "guidance

documents." *See In re Deepwater Horizon*, 470 S.W.3d 452, 460 (Tex. 2015) ("[I]nsurance policies can incorporate limitations on coverage encompassed in extrinsic documents by reference to those documents.").

Even assuming it is appropriate for us to consider these guidance documents, we do not agree that the AOC is a claim that triggered ASIC's duty to defend against the criminal allegations. When there is a claim for clean-up costs, ASIC has a duty to defend against "such claim." This language provides a common-sense limit on ASIC's duty to defend: When there is a written demand for clean-up costs covered by the policy, ASIC must defend against that written demand. Were we to agree with Waste that the AOC, read in combination with the guidance documents, triggered a duty for ASIC to defend in all criminal or civil proceedings arising from the same pollution incidents, we would effectively be reading this bargained-for restriction out of the contract. We are not at liberty to do so. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language."); *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 499 (Tex. 2020) ("The goal in interpreting the contractual duty to defend—as when interpreting any contract language—is to ascertain the true intentions of the parties as expressed in the writing itself." (internal quotation marks and citation omitted)).

Alternatively, Waste argues that the indictment constitutes a claim for clean-up costs that triggered ASIC's duty to defend against the criminal allegations. The indictment, which was explicitly limited to criminal rather than civil penalties, does not expressly seek *any* remedy from Waste. Therefore, on its face, the indictment does not appear to fall within the policy's definition of a "Claim."

Nevertheless, Waste argues that the lack of an explicit demand for a remedy merely introduces ambiguity about whether the indictment constitutes a claim. Under Texas's eight corners rule, Waste argues that this ambiguity should be resolved in its favor. In essence, Waste argues that ASIC had a duty to defend against the criminal allegations because clean-up costs were a potential outcome of the criminal proceedings.

We disagree. While ambiguity about whether the complaint states a cause of action within the coverage of the insurance policy should be resolved in the insured's favor, *see Nat'l Union Fire Ins.*, 939 S.W.2d at 141, we will not "look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Id.* at 142. Instead, "[w]e consider the entire agreement and, to the extent possible, resolve any conflicts by harmonizing the agreement's provisions, rather than by applying arbitrary or mechanical default rules." *Richards*, 597 S.W.3d at 497 (quoting *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 744 (Tex. 2020)). Under the plain language of the contract, ASIC only has a duty to defend against written demands seeking a remedy from Waste for a covered loss. The indictment does not seek a remedy, so it did not trigger the duty to defend.[5]

The district court did not err in finding that there was no claim that triggered ASIC's duty to defend against the criminal allegations. Therefore, the district court did not err in granting summary judgment in favor of ASIC on this issue.

The district court also did not err in granting summary judgment in favor of ASIC on all remaining claims. Waste's only challenge to this ultimate

---

[5] Because we find that there was no claim that triggered ASIC's duty to defend, we need not address ASIC's alternative argument that the policy's exclusion for "Claims or Loss . . . [d]ue to any criminal fines, criminal penalties or criminal assessments" precludes a finding of a duty to defend against the criminal allegations.

No. 19-20674

summary judgment award is dependent upon its duty to defend argument, which we deny above.

AFFIRMED.